UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MIA SALIBELLO,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**OMNICOM MEDIA GROUP HOLDINGS INC. and OMD USA LLC,**<br><br>**Defendants.** | Civil Action No.<br><br>**COMPLAINT**<br><br>**PLAINTIFF DEMANDS A TRIAL BY JURY** |

Plaintiff Mia Salibello ("Plaintiff" or "Ms. Salibello"), by way of her attorneys Mesidor PLLC against Defendants Omnicom Media Group Holdings Inc. ("Omnicom Media Group") and OMD USA LLC ("OMD USA") (collectively "Omnicom"), alleges the following:

## NATURE OF THE ACTION

1. Plaintiff brings this action to recover damages and remedies for unlawful gender and age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII'), as amended, the New York State Human Rights Law, N.Y. Exec. Law §§ 290, et seq. ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, et seq. ("NYCHRL"), as well as for violation of the New York Labor Law ("NYLL") § 740.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

3. Because Omnicom resides in this judicial district, venue is proper pursuant to 28 U.S.C. § 1391(b). Alternatively, venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## ADMINISTRATIVE PREREQUISTIES

4. On or about February 1, 2024, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity ("EEOC").

5. On or about April 1, 2024, the EEOC issued Plaintiff a Notice of Right to Sue.

6. Plaintiff has fully complied with the administrative requisites of Title VII and exhausted the administrative remedies provided therein.

## PARTIES

7. Plaintiff is an individual residing in Pound Ridge, New York.

8. Upon information and belief, Omnicom is a global advertising, marketing, and corporate communications company with an address at 195 Broadway, New York, New York 10007. During the relevant time period, Omnicom had over 75,000 employees worldwide.

## FACTS COMMON TO ALL COUNTS

9. In the summer of 2022, Omnicom's Talent Acquisition Director Jordan Sussberg contacted Ms. Salibello regarding Omnicom's Chief People Officer ("CPO") position.

10. In July and August 2022, Ms. Salibello interviewed with the aforementioned Mr. Sussberg, Chief Operating Officer of North America John Swift ("COO Swift"), Chief Executive Officer of North America Ralph Pardo ("CEO Pardo"), Chief Financial Officer of North America Richard Small ("CFO Small"), Chief Talent Officer Diana Blancone ("CTO Blancone"), and Chief Talent Officer Kate King ("CTO King").

11. Ms. Salibello was told that Omnicom had been searching for approximately six (6) months for a CPO and that it sought a progressive, innovative strategic thinker who could "move the HR function forward progressively and centralize the function within the OMG Network."

12. On August 29, 2022, Ms. Salibello signed an offer letter to work as Omnicom's CPO.

13. At the time that she was hired, Ms. Salibello was fifty-six (56) years old.

14. Ascending to the CPO position was the culmination of Ms. Salibello's thirty-five (35) years of hard work, during which she served as a Human Resources executive for several companies. It offered her an opportunity to leverage her experience and knowledge of the various sectors – such as media, advertising, broadcasting and public relations – in which Omnicom operated. Consistent with her stated mandate, she looked forward to serving as a change agent for a global media company.

**A. Disparate treatment of Plaintiff and other evidence of discrimination**

15. Ms. Salibello's first day of work was September 12, 2022.

16. COO Swift was not in the office the first week of Ms. Salibello's employment, nor did he schedule any introductory meetings for her within the network of 5,000 employees.

17. When COO Swift returned to the office, he did not take Ms. Salibello to the customary lunch or coffee or even stop by her desk when they were both in the office.

18. A further detraction from the norm, Omnicom made no announcement at the time of hire of Ms. Salibello's hiring to the US network and approximately the 40-employee HR organization that she headed.

19. Adding to Ms. Salibello's inhospitable welcome, when she took the initiative to schedule meetings with her direct reports, one of them stated that he had no knowledge of her hiring.

20. At a subsequent Leadership Team meeting, CEO Pardo introduced Ms. Salibello but dubbed her an "outsider."

21. When she and others met with CEO Pardo after the meeting, he again called her an "outsider." This expressed sentiment sews some seed of distrust around Ms. Salibello that were difficult to overcome.

22. When Ms. Salibello arrived at Omnicom, as part of the Chief People Officer duties and responsibilities, she undertook a 90-day audit and evaluation of all aspects of the HR function and practices.

23. During that 90-day audit, Ms. Salibello discovered, among other things, that many Omnicom employees in New York, California, and other states where employees are

working remotely were misclassified employees under the Fair Labor Standards Acts (FLSA), as well as non-compliance with the Gender Pay Act contrary to federal and state laws.

24. Ms. Salibello raised this issue with Mr. Swift in October 2022, even before presenting the final audit results.

25. In response, Mr. Swift simply stated that he did not want to spend more money on payroll (as would have been required to legally classify employees and therefore pay more overtime).

26. No one took any action to rectify the illegal situation.

27. Ms. Salibello also raised the issue of non-compliance with respect to sending required new hire notices to new employees during the onboarding process, and failure to provide sick days for New York temporary employees as required under state law, where again, Mr. Swift's response was a flat refusal to "pay them for more time off."

28. During the ongoing audit, Ms. Salibello discovered, among other things, that employees in New York, California, and other states where employees are living and working remotely, were misclassified employees, as well as non-compliant with the Gender Pay Act contrary to federal and state laws.

29. A little over a month after Ms. Salibello began her employment, on October 21, 2022, CEO Pardo and CFO Small set up an impromptu Teams call with her and the CEO Christina Hanson ("CEO Hanson"), of OMD, one of Omnicom's Media Group's subsidiary.

30. CEO Pardo began the meeting by berating and belittling the two women in a patriarchal disposition, stating, "You disobeyed me and have no authority to make any decisions."

31. The stated offense was CEO Hanson's decision – with the support of her Agency management as well as the worldwide CEO and CEO Pardo's boss, Florian Adamski ("Adamski") – to terminate her Chief Operating Officer, Mandy Walis ("COO Walis").

32. CEO Hanson complained to Mr. Adamski about CEO Pardo's comment.

33. Ms. Salibello complained to COO Swift regarding the aforementioned incident, which she rightly viewed as a discriminatory comment made to two C-level women, one whom is a minority.

34. She told COO Swift that she felt humiliated and "degraded" in front of CEO Hanson.

35. Ms. Salibello asked COO Swift, "Is my job in jeopardy because I feel like it is?"

36. COO Swift did not respond to this question.

37. Although Ms. Salibello asked how she could "get on his calendar" and "rectify" the situation, COO Swift responded, "Don't get on his calendar or speak to him. What he says, goes, he's, our boss."

38. Ms. Salibello asked COO Swift, "Will this be water under the bridge with Ralph and we can move on, or will this be an ongoing issue between us?"

39. COO Swift responded, "The latter."

40. Sometime thereafter, CEO Hanson confided to Ms. Salibello that, in the former's opinion, CEO Pardo was a misogynist and a sexist.

41. CEO Hanson and Ms. Salibello's experiences with CEO Pardo were neither isolated nor unique. Ms. Salibello soon learned that CEO Pardo often made sexist remarks and that he frequently targeted women over forty (40) whom he believed had challenged or otherwise "wronged" him.

42. In October 2022, CEO Pardo reportedly stated to the COO Walis, who as noted above had been terminated and was transitioning her responsibilities over a 30-day period, "You should find an administrative job because you're a woman and have kids. That may be a better fit for you."

43. COO Walis filed a complaint with HR regarding CEO Pardo's conduct.

44. In response to this complaint, Omnicom took no disciplinary action against CEO Pardo, nor did it take any remedial measures.

45. Prior to that, on or about the summer of 2022, CEO Pardo stated to Chief Research Officer Renee Cassard, who is female, was at the time approximately 47 years old and had been at Omnicom for several years, "When are you leaving? You have been here a long time"

46. Although Ms. Cassard complained to COO Swift, no disciplinary action was imposed against Pardo nor were any remedial measures taken.

47. During a conversation with Ms. Salibello, COO Swift said, "Yeah, we know [CEO Pardo]'s a risk to the business, but we aren't going to pursue it."

**B.     Plaintiff uncovers and reports numerous violations of federal, state and city law**

48. On or about September 2022, Ms. Salibello scheduled a one-on-one meeting with COO Swift.

49. At this meeting, they agreed that, as discussed during the interview process, she would conduct an audit of the HR department to ensure that its policies and procedures were in compliance with the law and best practices.

50. Ms. Salibello and COO Swift agreed that this audit would be completed in ninety (90) days and that, thereafter, Ms. Salibello would present her findings and seek to implement any required changes.

51. As a result of this audit as well as thereafter, Ms. Salibello uncovered and reported various violations of the law by Omnicom related to, *inter alia,* Omnicom's failure to provide employees with i) wage theft forms and ii) notices/forms related to, *inter alia,* pregnancy, sexual harassment, and sick leave, all of which were required by New York law.

52. Similarly, Ms. Salibello learned that Omnicom had failed to provide wage theft forms required under California law as well as forms related to, *inter alia*, pregnancy, sexual harassment, paid family leave, lactation and disability insurance.

53. When Ms. Salibello informed COO Swift that, under New York City law, employers like Omnicom that had one hundred (100) or more employees were required to provide temporary employees with fifty-six (56) hours of paid sick leave in each calendar year, COO Sift responded, "I'm not giving anyone more time off." Although she responded that it was not a "company decision" bur rather was legally mandated, he again dismissed her concerns.

54. In addition, in violation of federal, state and local laws, many of Omnicom's current and former employees had been improperly classified as exempt and non-exempt.

55. In response to her raising issues regarding the Fair Labor Standards Act (FLSA) misclassifications, Ms. Salibello was told, "Finance doesn't want to pay overtime and decides the salaries of employees."

56. Omnicom also misclassified certain individuals as independent contractors. To cite one example, an individual located in Florida was performing the job of a full-time employee but was being paid by Omnicom as an independent contractor and utilizing a Federal Employee Identification Number.

57. Ms. Salibello informed both COO Swift and CFO Small that this individual was working as a Senior Director and utilizing OMG email and computers; moreover, she attended and held meetings, interacted with OMG clients, took direction from her manager, had no fiduciary responsibilities and otherwise functioned as an employee.

58. Nevertheless, notwithstanding Ms. Salibello's protestations, this individual remained classified as an independent contractor for an additional year.

59. Ms. Salibello also discovered and reported that there were hundreds of employees—employed by various subsidiaries of Omnicom Media Group including OMD USA, Hearts and Science LLC, PHD Media LLC, Outdoor Media Group LLC, Resolution Media Inc., and Jump 450 LLC—who lived and worked remotely in states (and the District of Columbia) where Omnicom did not have a registered business entity; as a result, they did not pay state, city, and/or local taxes where they lived and worked. This included and wasn't limited to, Arizona, Colorado, District of Columbia, Georgia, Idaho, Illinois, Indiana, Kentucky, Maine, Maryland, Puerto Rico, Massachusetts, Michigan, Minnesota,

Missouri, Nevada, North Carolina, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Virginia and various other states.

60. In response to various violations of the law that Ms. Salibello uncovered, she was told, "We aren't interested in paying people more or giving them more paid time off."

61. Ms. Salibello also discovered and reported that, in violation of federal law, Omnicom was withholding Medicare and Social Security from employees who were working under a L1 Visa.

**C.     Retaliation against Ms. Salibello**

62. Due to, first, her complaint to COO Swift regarding CEO Pardo as described in paragraphs 29-32, supra and second, her efforts sought to ensure that Omnicom complied with federal, state and local law, Ms. Salibello was subject to a campaign of retaliation.

63. CEO Pardo, COO Swift, and CFO Small excluded her from meetings, withheld pertinent information from her and stripped her of all of her responsibilities as CPO.

64. Ms. Salibello received no performance review.

65. Ms. Salibello was not provided with an outline of goals to be met.

66. Her role became that of a clerk who worked with the facility manager, receptionist, movers, etc.; compiled local return-to-office and work-from-home lists and needed IT resources; and ensured boxes were packed up for employees.

67. In early December 2022, COO Swift stated unsolicited to Kate O'Brien, President of Resolution Agency, "I wouldn't have hired [Ms. Salibello], she can't be trusted and is a problem."

10

68. When OMG secured the L'Oreal business in January 2023, Ms. Salibello was not informed prior to the public announcement, nor was she part of any of the staffing or budgeting discussions.

69. In fact, she was not invited to a single meeting for this $200 million dollar account win.

70. When the CEO of Omnicom Group, John Wren, announced that the company would be mandating a three (3) day per week return to the office, Ms. Salibello was excluded from the multiple C-level meetings scheduled by CEO Pardo to ensure the orderly return of Omnicom's 5,000 employees.

71. Finally, although her stated mandate was to restructure the HR department and centralize operations, automate processes and eliminate staff redundancies, she was not permitted to manage her budget or, for the most part, to hire and terminate her team employees.

72. This was not the protocol or process that her peers followed. To the contrary, every other C-level executive was able to hire, fire, restructure, transfer and manage his or her budget.

73. When bonuses were paid out in May 2023, Ms. Salibello was excluded without explanation.

**D. After Ms. Salibello continues her objections to Omnicom's violations of state and federal law, her employment is summarily terminated**

74. Throughout the spring and summer of 2023, Ms. Salibello continued to object to Omnicom's various unlawful acts.

75. For example, when she spoke to COO Swift, CFO Small, Director of HRIS, Jennifer Sportiello, and Vice President of Finance, Yelena Pavlenko, regarding the serious

consequences of misclassifying employees under the FLSA and New York's Wage Theft Prevention Act.

76. She also discussed Omnicom's inadequate onboarding process, in which the company failed to provide forms and notices required by California, New York, etc., as well as its employee handbook, which had not been updated in approximately eight (8) years.

77. Finally, she recommended that an audit be conducted to ensure that, as required under various laws such as New York Labor Law § 194 and the federal Equal Pay Act, male and female employees performing the same or substantially similar roles were being paid equally.

78. In July 2023, during a conversation with CFO Small's direct reports, Yelena Pavlenko and Jennifer Sportiello, Ms. Salibello again raised the issue of Omnicom's failure to comply with federal and state overtime law.

79. Approximately one month later, in August 2023, COO Swift decided to terminate Ms. Salibello's employment.

80. On August 28, 2023, COO Swift informed Ms. Salibello that "it was not working out" and that her employment was being terminated as of September 1, 2023.

81. In accordance with Omnicom's termination transition protocol at the C-level, she was told that she could transition her responsibilities and workload through the September 1, 2023 termination date.

82. Instead, her access to her email and calendar was immediately cut off.

83. Ms. Salibello was the fifth female executive over the age of 40 who has been terminated by Omnicom under the leadership of CEO Pardo and COO Swift.

84. After approximately five months, CTO Blancone assumed Ms. Salibello's duties as CPO while also retaining the title of CPO.

85. CTO Blancone is over fifteen (1) years younger than Ms. Salibello.

**FIRST CAUSE OF ACTION**
**(Gender Discrimination in**
**Violation of Title VII)**

86. Plaintiff hereby repeats and realleges all of the allegations set forth above as if set forth at length herein.

87. Ms. Salibello is a woman and, as set such, is a member of a protected class.

88. As evidenced by, *inter alia*, i) her prior experience as a Human Resources executive for several companies; and ii) Defendants' decision to choose her after an approximately six-month search and after she had interviewed with the top executives at Omnicom, Ms. Salibello was qualified for the CPO position.

89. As reflected by, *inter alia*, COO Swift's initial failure to integrate Ms. Salibello into the organization; his reference to her as an "outsider"; his disrespectful and/or discriminatory treatment of her and other women such as CEO Hanson and COO Walis; and CEO Pardo's discriminatory conduct and targeting of women over forty (40), gender discrimination motivated the decision to terminate Ms. Salibello's employment.

90. Other evidence of discrimination includes the fact that she was never evaluated; systematically stripped of all responsibility; excluded from various important projects and meetings; and summarily terminated.

91. Ms. Salibello was aware of misogynistic comments that were made about other female employees in the workplace such as, ""You should find an administrative job

13

because you're a woman and have kids. That may be a better fit for you." Omnicom had notice of said comments as it was reported to HR and no action was taken by the Company.

92. It was common knowledge within Omnicon that Mr. Pardo would oftenmake sexist remarks to women that he felt "wronged him'. He spoke to women with very little respect and often treated them as if they were beneath him.

93. Finally, as noted <u>supra</u>, Ms. Salibello was the fifth female executive over the age of 40 who has been terminated by Omnicom under the leadership of CEO Pardo and COO Swift.

### SECOND CAUSE OF ACTION
(Gender and Age Discrimination in Violation of
New York State Human Rights Law § 296 and
N.Y.C. Admin. Code § 8-107)

94. Plaintiff hereby repeats and realleges all of the allegations set forth above as if set forth at length herein.

95. Under both the NYSHRL and the NYCHRL, it is unlawful for an employer to discriminate against an employee because of her gender or age.

96. From the outset of her employment, Ms. Salibello was treated less well than other employees who were not female and/or over forty (40).

97. This is evidenced by, *inter alia*, COO Swift's initial failure to integrate Ms. Salibello into the organization; his reference to her as an outsider; and his disrespectful and/or discriminatory treatment of her and other women such as CEO Hanson and COO Walis.

98. Other evidence of discrimination includes CEO Pardo's discriminatory conduct and targeting of women over forty (40).

99. In addition, she was never evaluated; systematically stripped of all responsibility; excluded from various important projects and meetings; and summarily terminated.

100. Ms. Salibello was subjected to hearing numerous derogatory comments related to the age of various women in the workplace during her time at Omnicom.

101. As noted supra, Ms. Salibello was the fifth female executive over the age of 40 who has been terminated by Omnicom under the leadership of CEO Pardo and COO Swift.

102. Finally, Ms. Salibello's replacement, CTO Blancone was over fifteen (15) years younger than Ms. Salibello. The individuals that replaced the other women that were terminated, were also much younger.

### THIRD CAUSE OF ACTION
### (Violation of the NYLL § 740)

103. Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

104. New York Labor Law § 740(2) provides that "[a]n employer shall not take any retaliatory action against an employee ... because such employee ... (a) discloses, or threatens to disclose to a supervisor ... an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation ... or (c) objects to, or refuses to participate in any such activity, policy or practice.

105. As set forth supra, on numerous occasions, Ms. Salibello identified and objected to numerous violations of federal, state and New York City law related to, *inter alia*, OMG's i) misclassification of employees as exempt or non-exempt and as

independent contractors; ii) failure to pay state, city, and/or local taxes where its employees lived and worked; iii) failure to provide employees with legally-required forms; and vi) improper withholding of Medicare and Social Security from employees who were working under a L1 Visa.

106. In retaliation for her protected complaints, Defendants subjected Plaintiff to a number of retaliatory actions including having some of the responsibilities of her position taken away, feeling ostracized within the company, and culminating into the termination of her employment.

107. Defendants' retaliatory action was willful, malicious or wanton.

108. As a direct and proximate result of Defendants' retaliatory conduct in violation of New York Labor Law § 740, Plaintiff has suffered, and continues to suffer, monetary and non-monetary loss for which she is entitled to an award of monetary damages and other relief, to the greatest extent permitted by law.

WHEREFORE, Plaintiff Mia Salibello respectfully requests that the Court enter judgment in her favor against Defendants Omnicom Media Group Holdings Inc. and OMD USA LLC and that she be granted the following relief:

A. An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

B. An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages;

C. An award of punitive damages;

D. Pre- and post-judgment interest on all amounts due;

E. An award of costs that Plaintiff incurs in this action, as well as an award of reasonable attorneys' fees to the fullest extent permitted by law; and

F. Such other and further relief as the Court may deem just and proper.

### G.  JURY DEMAND

Plaintiff Mia Salibello hereby demands a trial by jury on all claims and issues so triable.

Dated: New York, New York
June 29, 2024

Respectfully submitted,

*[signature]*

MARJORIE MESIDOR  (MM1978)

MESIDOR PLLC
260 Madison Avenue, 8th Floor
New York, New York
(212) 930-6010
mm@marjorimesidor.com

*Attorney for Plaintiff*